**Related DDJ**



FILED

CLERK, U.S. DISTRICT COURT

11/15/2025

CENTRAL DISTRICT OF CALIFORNIA

BY_____LR_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Hector Gutierrez
1017 Rosewood Ave
Inglewood CA. 90301
424-200-1504
heg254@aol.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| HECTOR GUTIERREZ, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF INGLEWOOD, A MUNICIPAL CORPORATION; JAMES T. BUTTS, JR., INDIVIDUALLY AS MAYOR; AIRBNB, INC., A DELAWARE CORPORATION; BRIAN CHESKY, INDIVIDUALLY AS CEO OF AIRBNB, INC.; AND DOES 1-10 inclusive, <br><br> Defendants. | Case No.: **2:25-CV-11655-MCS-AS** <br><br> COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 FOR: <br><br> 1. VIOLATION OF COMMERCE CLAUSE (U.S. CONST. ART. I, § 8, CL. 3) <br> 2. VIOLATION OF FOURTH AMENDMENT - WARRANTLESS SEARCH AND SEIZURE <br> 3. VIOLATION OF THIRTEENTH AMENDMENT - INVOLUNTARY SERVITUDE <br> 4. VIOLATION OF FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS <br> 5. VIOLATION OF FOURTEENTH AMENDMENT - SUBSTANTIVE DUE PROCESS <br> 6. VIOLATION OF EIGHTH AMENDMENT - EXCESSIVE FINES |

7. VIOLATION OF FIFTH AMENDMENT - DEPRIVATION WITHOUT DUE PROCESS

8. VIOLATION OF FIRST AMENDMENT - RETALIATION AND SUPPRESSION OF SPEECH

9. VIOLATION OF FOURTEENTH AMENDMENT - EQUAL PROTECTION

10. CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. §§ 1983 AND 1985(3))

11. MONELL MUNICIPAL LIABILITY (42 U.S.C. § 1983)

12. CALIFORNIA BANE ACT (CAL. CIV. CODE§52.1)

13. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

14. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

15. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

16. VIOLATION OF CALIFORNIA CONSTITUTION - DUE PROCESS (ART. I, § 7)

17. VIOLATION OF CALIFORNIA CONSTITUTION - PRIVACY (ART. I, § 1)

18. VIOLATION OF CALIFORNIA CONSTITUTION

- UNREASONABLE SEARCHES (ART. I, § 13)

19. DECLARATORY RELIEF (28 U.S.C. § 2201; CAL. CODE CIV. PROC. § 1060)

DEMAND FOR JURY TRIAL

I. INTRODUCTION

1. This civil rights action challenges a racially discriminatory and unconstitutional conspiracy between the City of Inglewood and Airbnb, Inc., designed to systematically deprive Plaintiff of his fundamental rights to life, liberty, and the pursuit of happiness—specifically, his ability to earn a living, participate in commerce, and secure his future by hosting travelers at his home. As a direct result of Defendants' unlawful scheme, Plaintiff has suffered substantial economic losses including lost income from hosting, loss of mental health, damage to his professional reputation, and the forced closure of his legitimate home-sharing operation. Beyond the financial devastation, Plaintiff endures daily shame and humiliation when neighbors inquire about his closed Airbnb—forcing him to either make excuses or

explain a persecution so complex it defeats listeners' attention, compounding his isolation. Most devastating is Plaintiff's inability to afford school supplies and basic necessities for his daughter, causing profound emotional pain as a father rendered powerless to provide for his child by Defendants' discriminatory actions. Defendants' conduct has caused Plaintiff severe emotional distress, anxiety, and a chilling effect on his willingness to exercise his constitutional rights. Defendants conditioned Plaintiff's exercise of these rights on his execution of a coercive waiver disguised as a "business license" under Inglewood Municipal Code Ordinance No. 22-15—a scheme requiring him to surrender his Constitutional, Civil, Property, Financial, and Privacy rights to the City of Inglewood through the Short-Term Rental (STR) Permit application process. Defendants' entire persecution scheme was predicated on a calculated, discriminatory assessment: Poor + Hispanic = Easy Prey. Defendants believed that economically vulnerable Hispanic individuals would simply sign away their rights because (1) they lack knowledge of their legal protections, (2) they cannot afford legal representation to challenge such systemic abuse, and (3) compliance and

submission appear easier than resistance. This discriminatory assumption formed the foundation of defendants' unlawful conduct and their confidence in executing the scheme without accountability.

2.   Defendants believed that economically vulnerable Hispanic individuals—particularly in Inglewood's predominantly Black and Hispanic community (90% minority population)—would not fight back against governmental and corporate overreach. Defendants felt confident they could inflict constitutional violations, economic devastation, and psychological trauma without accountability because they targeted a protected class they viewed as powerless, uneducated, and unable to resist.

3.   Defendants' discriminatory calculation enabled them to implement an unconstitutional scheme requiring Plaintiff to choose between: (a) waiving his Fourth Amendment rights to freedom from warrantless searches by consenting to inspections in the STR Permit application; (b) submitting to Thirteenth Amendment involuntary servitude by performing unpaid tax collection labor as required under Ordinance No. 22-15; (c) surrendering

Fifth Amendment property rights; (d) waiving Fourteenth Amendment due process protections; (e) accepting Eighth Amendment excessive fines; (f) waiving his right to sue for constitutional violations—or face complete destruction of his business, elimination of his sole income source, and financial ruin leading to homelessness.

4.  When Plaintiff—contrary to Defendants' racist assumptions—refused to surrender his constitutional rights for economic survival, Defendants carried out their threat. For over 730 consecutive days and counting, Defendants have subjected Plaintiff to continuous constitutional violations causing catastrophic financial harm (over $375,000 in lost income at $500/day), severe emotional distress, and imminent threat of losing his home and privileges.

A.  Each day that Defendants maintain this deprivation constitutes a separate and continuing violation of Plaintiff's constitutional rights. Every morning Plaintiff wakes unable to host travelers, unable to earn income, and unable to provide for his family represents a new injury inflicted by Defendants'

ongoing enforcement of their unconstitutional scheme. This is not a completed tort from November 15th, 2023—it is an active, daily deprivation that has not ceased and will not cease until Defendants restore Plaintiff's rights.

5. Defendants' racial and ethnic discrimination was not incidental—it was foundational. Their confidence in executing this persecution scheme derived directly from their belief that a poor Hispanic man would submit his rights "for a dollar" rather than endure the pain they knew they could inflict. Defendants knew better at all times but continued the deprivation precisely because of Plaintiff's race, ethnicity, and economic vulnerability.

II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1983, 1985, and 1988.

7. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b). All events occurred in the Central District of California. The subject property is located at 1017 Rosewood Avenue, Inglewood, California 90301, within this District.

9. California Tort Claims Act Compliance: Plaintiff filed government tort claims with the City of Inglewood in: April 2024, October 2024, April 2025, October 2025. All claims were rejected or deemed rejected by operation of law. This action is timely filed within six months of rejection. Cal. Gov't Code § 945.6.

III. PARTIES

10. Plaintiff HECTOR GUTIERREZ is an individual residing at 1017 Rosewood Avenue, Inglewood, California 90301. This is his primary residence and homestead.

11. Plaintiff is a lawful resident of the property, which is owned by his parents.

12. Plaintiff is Hispanic and of Hispanic ethnicity. He is economically vulnerable, having relied on hosting income as survival income necessary to maintain the property and prevent foreclosure—not business profit or wealth accumulation.

13. Plaintiff hosted travelers in his home through the Airbnb platform to generate income necessary to pay property taxes and fund ongoing repairs to preserve the family residence. This income was essential for basic survival and property maintenance.

A. Defendants

14. Defendant CITY OF INGLEWOOD is a charter city and municipal corporation organized under California law. Inglewood's population is approximately 90% Black and Hispanic—a predominantly minority

community that Defendants targeted for exploitation through the unconstitutional scheme alleged herein. The City may be served through its City Clerk at One Manchester Boulevard, Inglewood, California 90301.

15. Defendant JAMES T. BUTTS, JR. is sued individually and in his official capacity as Mayor of the City of Inglewood. He is the chief executive officer of the City, a licensed California attorney (State Bar member since 1978), and former Chief of Police in Santa Monica and Inglewood with extensive constitutional law training. He personally negotiated the conspiracy alleged herein, has final policymaking authority, and knew or should have known that targeting economically vulnerable Hispanic residents for rights-waiver schemes violates clearly established constitutional law. He may be served at One Manchester Boulevard, Inglewood, California 90301.

16. Defendant AIRBNB, INC. is a Delaware corporation with its principal place of business at 888 Brannan Street, San Francisco, California 94103. Airbnb operates an online marketplace connecting hosts with travelers and controls approximately 60-70% of the hosting market. Airbnb knowingly

participated in a scheme designed to exploit predominantly minority, economically vulnerable hosts by conditioning their livelihoods on waiver of constitutional rights. Airbnb may be served through its registered agent, Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

17. Defendant BRIAN CHESKY is sued individually and in his official capacity as CEO and co-founder of Airbnb, Inc. He has final decision-making authority over Airbnb's policies, including government partnerships. He personally approved and profits from the discriminatory conspiracy alleged herein, knowing that it would disproportionately harm minority and low-income hosts whom Defendants believed would not resist. He may be served at 888 Brannan Street, San Francisco, California 94103.

18. DOES 1-10 are individuals and entities whose identities are presently unknown but who participated in the violations alleged herein, including City employees (Alicia Fong, City Manager, City Attorney staff, Code

Enforcement officers) and Airbnb executives and employees. Plaintiff will amend to identify Does when discovered.

## B. CONTINUING VIOLATIONS DOCTRINE AND STATUTE OF LIMITATIONS

19. This action involves continuing violations of Plaintiff's constitutional, statutory, and common law rights. The conduct challenged herein is ongoing and has not ceased.

20. Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982); Barapind v. Enomoto, 400 F.3d 744, 749-50 (9th Cir. 2005).

21. Defendants' violations constitute continuing conduct rather than discrete acts because:

a) Airbnb continues to maintain the block on Plaintiff's listing every day

b) The City continues to enforce Ordinance No. 22-15 every day

c) Plaintiff suffers new economic injury (lost income) every day

d) Plaintiff suffers fresh emotional distress every day

e) Plaintiff's inability to provide for his daughter is renewed every day

22. Each day of continued deprivation is a separate violation with its own statute of limitations. The most recent violation occurred today, November 15, 2025. This action is therefore timely.

23. Moreover, Plaintiff could not have discovered or has discovered the full extent of Defendants' discriminatory conspiracy and coordinated

enforcement scheme without investigation, document review, legal research and internal documents that will be produced by defendants in discovery in this case. The discovery rule tolls any statute of limitations until Plaintiff knew or reasonably should have known the full extent of Defendants' unlawful conduct. Other factors may also be relevant, including when the damages began and ended. Additional discovery may reveal that the violations are more extensive or more malicious than initially known, and may further identify who was involved, what occurred, when and where it happened, why it was done, and how the defendants conspired to commit the constitutional violations and other unlawful acts.

24. Defendants are equitably estopped from asserting any statute of limitations defense because they continue to commit the very violations they would claim are time-barred. A defendant cannot maintain an ongoing constitutional violation while simultaneously arguing that the plaintiff's claim to end that violation is untimely.

IV. FACTUAL ALLEGATIONS

A. Background: Plaintiff's Hosting Activities and Defendants' Discriminatory Targeting

25. Prior to 2020, Plaintiff hosted travelers at his primary residence in Inglewood, renting rooms to travelers through Airbnb.

26. Plaintiff is Hispanic, of Hispanic ethnicity, and economically vulnerable. He hosted travelers to generate survival income necessary to pay property taxes on his parents' residence and fund ongoing repairs to preserve the family home. Without this income, the property would be lost to disrepair, tax foreclosure, and other consequences and Plaintiff would be at high risk of poverty and homelessness.

27. Plaintiff's hosting served travelers from across the United States and internationally, constituting interstate, intrastate and foreign commerce.

28. On or about January-February 2020, the COVID-19 pandemic shut down the travel industry globally. Plaintiff ceased hosting operations.

29. During 2021-2022, Plaintiff suffered severe health issues requiring surgeries and emergency room visits, preventing him from resuming hosting any sooner.

30. In October 2023, Plaintiff in preparation for November 15, 2023 opening of his home to hosting attempted to reactivate his Airbnb listing to resume earning the income necessary for taxes, insurance, repairs, income, survival and to prevent forfeiture of the property use.

B. The Discriminatory Conspiracy: Poor + Hispanic = Easy Prey

31. On or about October 20, 2023, when Plaintiff attempted to reactivate his Airbnb listing, he discovered that Defendants City of Inglewood and Airbnb, Inc. had entered into a conspiracy to block his listing and deprive him of his livelihood.

32. Specifically, Airbnb informed Plaintiff that pursuant to Inglewood Municipal Code Ordinance No. 22-15, enacted by the City of Inglewood,

Plaintiff could not host travelers on Airbnb's platform unless he obtained a city-issued Short-Term Rental (STR) Permit number and displayed that permit number on all advertisements and listings.

33. But for Defendants' conspiracy to enforce Ordinance No. 22-15 through Airbnb's platform, Plaintiff would have been able to continue hosting travelers and would not have suffered any of the economic, constitutional, or emotional harms alleged herein.

34. Ordinance No. 22-15 requires all short-term rental hosts to apply for and obtain an STR Permit from the City of Inglewood before advertising or operating a short-term rental.

35. The STR Permit application process under Ordinance No. 22-15 constitutes an unconstitutional rights-waiver scheme requiring hosts to:

a) Waive Fourth Amendment rights by consenting to warrantless inspections of their homes;

b) Submit to involuntary servitude under the Thirteenth Amendment by agreeing to collect and remit Transient Occupancy Tax (TOT) on behalf of the City without compensation;

c) Surrender Fifth Amendment property rights without just compensation;

d) Waive Fourteenth Amendment due process protections by submitting to arbitrary enforcement without pre-deprivation hearings;

e) Accept excessive fines under the Eighth Amendment for non-compliance;

f) Waive the right to sue for constitutional violations.

36. Plaintiff has a pre-existing contractual and business relationship with Airbnb predating Ordinance No. 22-15. Plaintiff created his Airbnb account, built his hosting reputation with positive reviews, established guest relationships, and relied on this platform as his primary means of earning survival income.

C. The Significance of Plaintiff's Pre-Existing Relationship with Airbnb

37. Plaintiff's situation is fundamentally different from a new host seeking to join Airbnb's platform for the first time. Plaintiff had an existing, established contractual and commercial relationship with Airbnb that predated Ordinance No. 22-15.

38. Pre-Existing Relationship Elements:

a) Account Creation: Plaintiff created his Airbnb account years before Ordinance 22-15 was enacted

b) Years of Successful Hosting: Plaintiff successfully hosted travelers for years, completing numerous bookings with positive reviews

c) Established Reputation: Plaintiff built hosting credibility and guest trust through consistent positive reviews

d) Income Reliance: Plaintiff depended on this income stream for survival and property maintenance

e) Contractual Relationship: Plaintiff and Airbnb had a binding contract governed by Airbnb's Terms of Service

39. When Airbnb blocked Plaintiff's listing on November 15, 2023, Airbnb did not merely refuse to do business with a new applicant. Airbnb severed a pre-existing contractual relationship with Plaintiff at the City's direction.

D. State Action: Airbnb and CEO Chesky as State Actors

40. Airbnb, Inc. and CEO Brian Chesky are state actors subject to constitutional constraints under 42 U.S.C. § 1983 because they acted under color of state law when enforcing Ordinance No. 22-15.

41. Under the joint action test established in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), state action exists when: (1) the deprivation is caused by the exercise of a right or privilege created by the State or by a rule of conduct imposed by the State, and (2) the party charged with the deprivation may fairly be said to be a state actor.

42. Both prongs are satisfied here:

a) The deprivation (blocking Plaintiff's listing) was caused by exercise of a right created by the State (enforcement power delegated through Ordinance No. 22-15)

b) Airbnb and Chesky are state actors because they jointly participated with the City in enforcing a municipal ordinance designed to compel constitutional rights waivers

43. Under the nexus/entwinement test from Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001), state action exists when there is such a 'close nexus between the State and the challenged action' that the action 'may be fairly treated as that of the State itself.'

44. The nexus between the City and Airbnb is overwhelming:

a) Express agreement to enforce city law

b) Coordinated enforcement system (City passes law, Airbnb blocks hosts)

c) Data sharing (Airbnb reports non-compliant hosts to City)

d) Financial entwinement (Airbnb collects TOT for City)

e) Mutual dependence (City needs Airbnb to enforce; Airbnb needs city approval to operate)

45. The City and Airbnb's conduct is so entwined that they cannot be separated for constitutional purposes.

46. Under Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), state action exists when the government has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'

47. The City's enforcement agreement with Airbnb constitutes:

a) Overt encouragement: City explicitly directed Airbnb to block non-permitted hosts

b) Coercive framework: Ordinance 22-15 made blocking legally required for Airbnb to maintain good standing with City

c) Significant encouragement: City and Airbnb coordinated to ensure universal compliance

48. But for the City's agreement with Airbnb, Airbnb would have had no basis—legal, contractual, or otherwise—to terminate Plaintiff's account.

49. Airbnb terminated Plaintiff's account solely because of the City's directive under Ordinance 22-15. Airbnb had no independent business reason to terminate Plaintiff:

a) Plaintiff violated no Airbnb Terms of Service

b) Plaintiff had positive reviews and good standing

c) Plaintiff posed no risk to guests or the platform

d) Plaintiff generated revenue for Airbnb

50. The termination was 100% driven by government mandate, not business judgment. This distinguishes Airbnb from a truly private actor exercising independent business discretion.

E. CEO Brian Chesky's Personal Role in State Action

51. Defendant Brian Chesky, as CEO and co-founder of Airbnb, Inc., personally:

a) Approved Airbnb's 'government partnership' strategy of entering enforcement agreements with municipalities

b) Negotiated or approved the specific agreement with the City of Inglewood

c) Directed Airbnb's engineering teams to program the automated blocking system

d) Maintained the policy of blocking hosts despite knowledge of constitutional violations

e) Profits personally from this arrangement through his ownership stake in Airbnb

52. Chesky is not a mere employee following orders. He is the final decision-maker who personally approved Airbnb's transformation from neutral platform to government enforcement arm.

53. Chesky's personal approval makes him individually liable under §1983 for the constitutional violations resulting from this state action.

54. Airbnb's market dominance strengthens its state action status:

a) Airbnb controls 60-70% of the short-term rental market

b) For most hosts, Airbnb is the only viable platform to reach travelers

c) Blocking from Airbnb = effective prohibition from short-term rental business

55. When a private monopoly exercises government-delegated enforcement power over access to a market, it acts as a state actor. See Marsh v. Alabama, 326 U.S. 501 (1946) (company town exercising governmental functions subject to constitutional constraints).

F. CAUSATION: But-For and Proximate Causation for Each Defendant

56. CAUSATION - DEFENDANT CITY OF INGLEWOOD

57. But-For Causation: But for the City of Inglewood's enactment and enforcement of Ordinance No. 22-15, Plaintiff would have been able to continue hosting travelers on Airbnb without interruption. The City's ordinance was an indispensable link in the chain of events leading to Plaintiff's deprivation. Without the ordinance, Airbnb would have had no basis to block Plaintiff's listing, and Plaintiff would have continued earning survival income.

58. Proximate Causation: The City's enactment of Ordinance No. 22-15 was the proximate cause of Plaintiff's constitutional injuries because:

a) Substantial Factor: The ordinance played a substantial and material part in bringing about Plaintiff's deprivation. The ordinance created the legal framework that enabled all subsequent constitutional violations

b) Direct and Natural Consequence: Plaintiff's injuries flowed directly from the ordinance without intervening causes. The causal chain is: (1) City enacts ordinance, (2) Airbnb enforces ordinance, (3) Plaintiff's listing blocked, (4) Plaintiff loses income and suffers constitutional violations

c) Reasonable Foreseeability: It was reasonably foreseeable that conditioning the ability to earn a living on waiver of constitutional rights would cause economic devastation and constitutional harm to hosts like Plaintiff. The City knew or should have known that the ordinance would deprive hosts of their livelihoods and constitutional protections

59. CAUSATION - DEFENDANT MAYOR JAMES T. BUTTS, JR.

60. But-For Causation: But for Mayor Butts' personal approval and direction of Ordinance No. 22-15 and the conspiracy with Airbnb, the constitutional violations would not have occurred. As the City's chief executive with final policymaking authority, Mayor Butts had the power to prevent the ordinance's enactment or refuse to enter the enforcement agreement with

Airbnb. His decision to proceed was an indispensable link in causing

Plaintiff's injuries.

61. Proximate Causation: Mayor Butts' conduct was the proximate cause of

Plaintiff's injuries because:

a) Substantial Factor: As final policymaker, Mayor Butts' approval was the

substantial and material cause of the constitutional violations. Without his

authorization, the conspiracy could not have proceeded

b) Direct and Natural Consequence: Plaintiff's injuries flowed directly from

Mayor Butts' policy decisions. His approval of the ordinance and conspiracy

created the mechanism for Plaintiff's deprivation

c) Reasonable Foreseeability: Mayor Butts, as a licensed attorney with 40+

years of legal experience and former Chief of Police with extensive

constitutional law training, knew or should have known that: (1)

conditioning economic activity on rights waivers violates clearly established

constitutional law, (2) targeting minority communities for such schemes

violates Equal Protection, and (3) the scheme would cause catastrophic harm

to economically vulnerable hosts. The harm to Plaintiff was a direct and foreseeable consequence of Mayor Butts' knowing violations

62. CAUSATION - DEFENDANT AIRBNB, INC.

63. But-For Causation: But for Airbnb's agreement to serve as the City's enforcement mechanism and its decision to block Plaintiff's listing, Plaintiff would have continued hosting and earning income. The City cannot monitor online platforms or block individual listings. Airbnb's participation was essential to the deprivation. Without Airbnb's enforcement, Ordinance No. 22-15 would be unenforceable against Plaintiff.

64. Proximate Causation: Airbnb's conduct was the proximate cause of Plaintiff's injuries because:

a) Substantial Factor: Airbnb's blocking of Plaintiff's listing was the direct, substantial cause of Plaintiff's economic devastation. Airbnb's action immediately terminated Plaintiff's sole source of income

b) Direct and Natural Consequence: Plaintiff's injuries flowed directly from Airbnb's blocking action. The causal sequence is unbroken: Airbnb blocked listing → Plaintiff cannot host → Plaintiff loses income → Plaintiff suffers financial ruin and constitutional violations

c) Reasonable Foreseeability: Airbnb knew or should have known that blocking hosts from their accounts would cause severe economic harm, especially to hosts who rely on Airbnb as their primary income source. Airbnb was aware that many hosts, particularly minority and economically vulnerable hosts, depend on the platform for survival income. The harm to Plaintiff was a direct and foreseeable consequence of Airbnb's enforcement actions

65. CAUSATION - DEFENDANT BRIAN CHESKY

66. But-For Causation: But for CEO Chesky's personal approval of Airbnb's government partnership strategy and the specific agreement with the City of Inglewood, Airbnb would not have entered into enforcement agreements

with municipalities. Chesky's policy decision enabled all subsequent enforcement actions against hosts like Plaintiff. Without Chesky's approval at the highest corporate level, Airbnb would have remained a neutral platform rather than becoming a government enforcement arm.

67. Proximate Causation: Chesky's conduct was the proximate cause of Plaintiff's injuries because:

a) Substantial Factor: Chesky's approval of the government partnership strategy was a substantial and material cause of Plaintiff's deprivation. As CEO and final decision-maker, his policy choices created the framework for all subsequent violations

b) Direct and Natural Consequence: The causal chain from Chesky's decision to Plaintiff's harm is direct: (1) Chesky approves partnership strategy, (2) Airbnb enters agreement with City, (3) Airbnb programs blocking system, (4) Plaintiff's listing blocked, (5) Plaintiff suffers constitutional and economic harm

c) Reasonable Foreseeability: Chesky knew or should have known that Airbnb's participation in government enforcement schemes would cause constitutional violations and economic harm to hosts. As CEO of a platform serving millions of hosts, Chesky was aware that many hosts depend on Airbnb income for survival. He knew that blocking hosts from the platform would devastate their livelihoods. The harm to Plaintiff was a direct and foreseeable consequence of Chesky's corporate policy decisions

G. Conspiracy Under 42 U.S.C. § 1985(3)

68. The agreement between the City, Mayor Butts, Airbnb, and CEO Chesky constitutes a conspiracy to deprive Plaintiff of constitutional rights under 42 U.S.C. § 1985(3).

69. Elements of §1985(3) Conspiracy:

a) Conspiracy: City/Butts and Airbnb/Chesky entered into an express agreement to enforce Ordinance 22-15 through platform blocking

b) Purpose of depriving civil rights: The conspiracy's purpose was to force hosts to waive constitutional rights or lose their livelihoods

c) Act in furtherance: Airbnb blocked Plaintiff's account on October 20, 2023, in furtherance of the conspiracy

d) Injury: Plaintiff suffered 730+ days of lost income and constitutional deprivations

e) Racial/class animus: The conspiracy targeted predominantly minority, economically vulnerable hosts in Inglewood whom defendants believed would submit to rights-waiver demands

70. All elements are satisfied. The conspiracy was designed to exploit hosts whom Defendants viewed as powerless based on race, ethnicity, and economic status.

H. Defendants' Discriminatory Targeting and Deliberate Indifference

71. Defendants have received detailed, explicit notice of the catastrophic harm inflicted on Plaintiff, including:

a) Plaintiff's multiple written complaints to Mayor Butts and CEO Chesky;

b) Plaintiff's detailed descriptions of severe emotional distress including passive death wishes;

c) Plaintiff's warnings that he cannot survive financially without hosting income;

d) Plaintiff's notice of property deterioration due to inability to fund repairs;

e) Plaintiff's accumulation of debt and imminent foreclosure risk

72. Despite this knowledge, Defendants have deliberately, intentionally, and with malicious indifference maintained the deprivation for over 730 consecutive days.

73. But for Defendants' knowing and deliberate maintenance of this scheme despite documented catastrophic harm, Plaintiff would not be facing imminent homelessness, complete financial ruin, and severe ongoing psychological trauma.

I. Defendants' Knowledge and Legal Expertise

74. Defendant Mayor James T. Butts, Jr. has 40 years of legal experience and extensive constitutional law training as a former Chief of Police.

75. Mayor Butts has final policymaking authority for the City of Inglewood and personally negotiated the conspiracy with Airbnb to enforce Ordinance No. 22-15.

76. Mayor Butts knew or should have known that:

a) Conditioning the ability to earn a living on waiver of constitutional rights violates clearly established law;

b) Requiring warrantless consent to home inspections as a condition of economic activity violates the Fourth Amendment;

c) Compelling unpaid labor (tax collection) violates the Thirteenth Amendment;

d) Depriving property rights without pre-deprivation due process violates the Fourteenth Amendment;

e) Imposing excessive fines violates the Eighth Amendment;

f) Targeting minority communities for rights-waiver schemes violates Equal Protection

77. But for Mayor Butts' personal approval and direction of this scheme, the City would not have enacted Ordinance No. 22-15 or conspired with Airbnb to enforce it.

78. Defendant Brian Chesky, as CEO of Airbnb, Inc., personally approved Airbnb's participation in this conspiracy.

79. Chesky knew or should have known that:

a) Airbnb's agreement to block hosts who refuse to waive constitutional rights makes Airbnb a state actor;

b) Blocking hosts from their accounts without due process violates the Fourteenth Amendment;

c) Airbnb's enforcement of unconstitutional municipal schemes makes Airbnb liable under §1983;

d) The scheme disproportionately harms minority and economically vulnerable hosts

80. But for Chesky's personal approval of Airbnb's participation in this conspiracy, Airbnb would not have blocked Plaintiff's listing and Plaintiff would have continued hosting uninterrupted.

81. Both Mayor Butts and CEO Chesky have received detailed written complaints from Plaintiff describing the constitutional violations, catastrophic financial harm, severe emotional distress, imminent foreclosure risk, and discriminatory targeting.

82. Despite receiving this detailed notice, both defendants have maintained the deprivation with deliberate indifference, demonstrating their malicious intent and reckless disregard for Plaintiff's constitutional rights.

83. But for Defendants' deliberate indifference to documented catastrophic harm over 730+ days, Plaintiff's injuries would not have reached this extreme and irreversible level.

J. Specific Constitutional Violations Under Ordinance No. 22-15

1. Fourth Amendment - Warrantless Searches

84. Ordinance No. 22-15 and the STR Permit application require hosts to consent to warrantless inspections of their homes as a condition of obtaining the permit.

85. This constitutes an unconstitutional condition: the government cannot condition the ability to earn a living on waiver of Fourth Amendment rights.

86. Plaintiff's home is his castle. He has an absolute right to refuse warrantless searches.

87. But for Defendants' continuing requirement that Plaintiff waive his Fourth Amendment rights to obtain the STR Permit, Plaintiff would be able to resume hosting travelers today without surrendering his constitutional protections against warrantless searches. This is not a past violation— Defendants continue to enforce this unconstitutional requirement each and

every day. Every day that passes with Plaintiff's listing blocked constitutes a fresh Fourth Amendment violation.

2. Thirteenth Amendment - Involuntary Servitude

88. Ordinance No. 22-15 requires hosts to collect and remit Transient Occupancy Tax (TOT) to the City of Inglewood.

89. This tax collection labor is uncompensated—hosts receive no payment for performing this governmental function.

90. Compelling private individuals to perform unpaid labor for the government constitutes involuntary servitude in violation of the Thirteenth Amendment.

91. But for Defendants' continuing requirement that Plaintiff perform unpaid tax collection labor as a condition of hosting, Plaintiff would not be subjected to ongoing involuntary servitude. This is not a past violation—Defendants continue to enforce this unconstitutional requirement each and

every day. Every day that Plaintiff remains unable to host without performing uncompensated government labor constitutes a fresh Thirteenth Amendment violation.

3. Fourteenth Amendment - Procedural Due Process

92. Defendants blocked Plaintiff's Airbnb account and deprived him of his property interest (his business, his income, his Airbnb account) without any pre-deprivation hearing.

93. Plaintiff received no notice, no opportunity to be heard, and no neutral decision-maker before suffering catastrophic economic deprivation.

94. The Fourteenth Amendment requires pre-deprivation due process when the government deprives an individual of a protected property or liberty interest.

95. But for Defendants' continuing deprivation of Plaintiff's property interest without any pre-deprivation due process, Plaintiff would be able to challenge

this deprivation today and resume his livelihood. This is not a past violation—Defendants continue to deprive Plaintiff of his property interest each and every day without affording him any hearing or opportunity to be heard. Every day that passes without due process constitutes a fresh Fourteenth Amendment procedural due process violation.

4. Fourteenth Amendment - Substantive Due Process

96. Plaintiff has a fundamental right to earn a living and pursue his chosen occupation.

97. Defendants have deprived Plaintiff of this fundamental right by conditioning it on waiver of other constitutional rights.

98. There is no legitimate governmental interest that justifies requiring individuals to waive their Fourth, Fifth, Eighth, and Thirteenth Amendment rights as a condition of economic survival.

99. But for Defendants' ongoing unconstitutional conditioning scheme, Plaintiff's fundamental right to earn a living would not continue to be violated today. This is not a past violation—Defendants continue to enforce this unconstitutional scheme each and every day. Every day that Plaintiff is denied the ability to earn a living through this coercive scheme constitutes a fresh substantive due process violation.

5. Eighth Amendment - Excessive Fines

100. Ordinance No. 22-15 imposes fines of up to $1,000 per day for violations.

101. These fines are grossly disproportionate to any alleged offense and constitute excessive fines under the Eighth Amendment.

102. The cumulative effect of potential daily fines would exceed any reasonable penalty and would serve only to punish and destroy economically vulnerable hosts.

103. But for the continuing threat of excessive fines under Ordinance No. 22-15, Plaintiff would not continue to be subjected to ongoing Eighth Amendment violations. This is not a past violation—Defendants continue to maintain the threat of these excessive fines each and every day. Every day that this unconstitutional fine structure remains in effect and blocks Plaintiff's ability to host constitutes a fresh Eighth Amendment violation.

6. Fifth Amendment - Takings Without Just Compensation

104. Defendants have deprived Plaintiff of his property interest in his Airbnb account, his business goodwill, his income-generating capacity, and his use of his own property for economic purposes.

105. This deprivation constitutes a regulatory taking without just compensation.

106. But for Defendants' continuing taking of Plaintiff's property rights without just compensation, Plaintiff would be able to retain and exercise the

full economic value and use of his property today. This is not a past violation—Defendants continue to deprive Plaintiff of his property rights each and every day. Every day that passes without just compensation while Plaintiff's property rights are taken constitutes a fresh Fifth Amendment violation.

7. First Amendment - Retaliation

107. Plaintiff exercised his First Amendment right to refuse to accept and sign the unconstitutional STR Permit application. Alicia Fong the housing Authority Supervisor explicitly told Plaintiff in a phone call that not complying with the requirements of the application will subject plaintiff to not be able to use the Airbnb platform. Ms. Fong made it clear that no submission and obedience to the City of Inglewood application process means "You don't make money"

108. Plaintiff communicated his constitutional objections to Defendants.

109. Defendants retaliated against Plaintiff for exercising his free speech rights by maintaining the block on his Airbnb listing for over 730 consecutive days.

110. But for Plaintiff's exercise of his First Amendment rights to object to unconstitutional government action, Defendants would not continue to retaliate by maintaining this ongoing deprivation that has now exceeded 730+ days and continues to this day. This is not a past violation—Defendants continue their retaliation each and every day by maintaining the block on Plaintiff's listing. Every day that this retaliatory deprivation continues constitutes a fresh First Amendment violation.

8. Fourteenth Amendment - Equal Protection

111. Defendants have targeted Plaintiff for deprivation based on his race (Hispanic), ethnicity (Hispanic), and economic status (poor).

112. Defendants designed and implemented Ordinance No. 22-15 with the specific intent to exploit minority and economically vulnerable hosts whom they believed would not resist.

113. Defendants have treated Plaintiff differently than similarly situated hosts based on his protected class status.

114. But for Plaintiff's race, ethnicity, and economic vulnerability, Defendants would not continue to target him for this discriminatory persecution scheme that persists to this day. This is not a past violation— Defendants continue to discriminate against Plaintiff each and every day by maintaining the deprivation based on his protected class status. Every day that this discriminatory scheme continues to block Plaintiff from hosting constitutes a fresh Equal Protection violation.

K. Monell Municipal Liability

115. The City of Inglewood is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because the constitutional violations resulted from official municipal policy, custom, and practice.

Theory 1: Express Policy - Ordinance No. 22-15

116. The City of Inglewood enacted Ordinance No. 22-15 as an express written policy requiring all short-term rental hosts to obtain STR Permits and display permit numbers on all advertisements.

117. This express policy directly caused the violations of Plaintiff's constitutional rights.

118. The policy required hosts to waive constitutional rights as a condition of economic activity, which is facially unconstitutional.

119. But for the City's enactment of this express policy, the constitutional violations would not have occurred.

120. The policy was the moving force behind the constitutional deprivations because it created the legal framework requiring hosts to submit to rights waivers or lose their livelihoods.

Theory 2: Custom and Practice

121. The City of Inglewood maintained a persistent and widespread custom of targeting economically vulnerable minority residents for rights-waiver schemes, which constituted a de facto policy.

122. This custom is evidenced by the City's deliberate choice to implement Ordinance No. 22-15 in a community that is 90% Black and Hispanic, knowing that these residents would be least able to resist governmental overreach.

123. Policymaking officials, including Mayor Butts, were aware of this discriminatory targeting and acquiesced in the custom by continuing enforcement despite knowledge of constitutional violations.

124. This custom was the moving force behind the violation of Plaintiff's constitutional rights because it created an environment where targeting poor Hispanic hosts for exploitation was standard City practice.

Theory 3: Failure to Train

125. The City of Inglewood failed to adequately train its officials and employees in constitutional law, demonstrating deliberate indifference to the constitutional rights of persons like Plaintiff.

126. The need for training in constitutional limitations on conditioning economic activity on rights waivers was obvious, yet the City provided no such training.

127. The City's training deficiency was the moving force behind the constitutional violations because adequately trained officials would have known that Ordinance No. 22-15 is unconstitutional and would have refused to enforce it.

Theory 4: Ratification

128. The City of Inglewood ratified the constitutional violations through the deliberate and knowing conduct of Mayor James T. Butts, Jr., who is the

final policymaker for the City with authority over enforcement of municipal ordinances.

129. Mayor Butts had actual knowledge of the constitutional violations through Plaintiff's detailed written complaints, yet he approved and maintained the enforcement scheme.

130. This ratification was the moving force behind the violations because it signaled official approval of unconstitutional conduct and created a de facto policy permitting such conduct.

V. CAUSES OF ACTION

131. Plaintiff realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 130 as though fully set forth herein.

FIRST CAUSE OF ACTION

Violation of Commerce Clause (U.S. Const. art. I, § 8, cl. 3)

Against All Defendants

132. Plaintiff realleges paragraphs 1-131 as if fully set forth herein.

133. Plaintiff's hosting activities constitute interstate and foreign commerce. Plaintiff hosted travelers from other states and foreign countries, facilitating travel and commerce across state and national borders.

134. Defendants' actions impose an unconstitutional burden on interstate commerce by prohibiting Plaintiff from engaging in lawful commercial activity (hosting travelers) unless he surrenders his constitutional rights.

135. The Commerce Clause prohibits states and municipalities from imposing unconstitutional conditions on participation in interstate commerce.

136. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing Ordinance No. 22-15, making them state

actors subject to constitutional constraints. Their joint participation with the City in enforcing this unconstitutional ordinance subjects them to liability under the Commerce Clause.

137. Defendants' violations of the Commerce Clause have caused Plaintiff severe economic harm, loss of livelihood, and deprivation of his ability to participate in interstate commerce, life, liberty and the pursuit of happiness.

SECOND CAUSE OF ACTION
Violation of Fourth Amendment –
Warrantless Search and Seizure
(42 U.S.C. § 1983)
Against All Defendants

138. Plaintiff realleges paragraphs 1-137 as if fully set forth herein.

139. The Fourth Amendment protects Plaintiff's right to be free from unreasonable searches and seizures, including the right to refuse consent to warrantless searches of his home.

140. Ordinance No. 22-15 requires Plaintiff to consent to warrantless inspections of his home as a condition of obtaining an STR Permit.

141. The government cannot condition the ability to earn a living on waiver of Fourth Amendment rights. This constitutes an unconstitutional condition.

142. CLEARLY ESTABLISHED LAW (Ninth Circuit): At the time of the violations, it was clearly established in the Ninth Circuit that conditioning economic benefits on waiver of Fourth Amendment rights violates the Constitution. See Pickup v. Brown, 740 F.3d 1208 (9th Cir. 2014) (government cannot condition professional licenses on speech restrictions); Lange v. California, 141 S. Ct. 2011 (2021) (Fourth Amendment protects home from warrantless entry).

143. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when they blocked Plaintiff's listing to enforce the City's warrantless search requirement. Their enforcement of this Fourth Amendment violation makes them liable as state actors under § 1983.

144. But for Defendants' continuing requirement that Plaintiff waive his Fourth Amendment rights, Plaintiff would be able to resume hosting travelers today. This is not a past violation—Defendants continue to enforce this unconstitutional requirement each and every day. Every day that passes with Plaintiff's listing blocked constitutes a fresh Fourth Amendment violation.

145. Defendants' actions have caused Plaintiff to suffer loss of privacy rights, loss of economic opportunity, and ongoing constitutional violations.

THIRD CAUSE OF ACTION
Violation of Thirteenth Amendment - Involuntary Servitude
(42 U.S.C. § 1983)
Against All Defendants

146. Plaintiff realleges paragraphs 1-145 as if fully set forth herein.

147. The Thirteenth Amendment prohibits involuntary servitude except as punishment for crime.

PAGE **54** OF **89**

148. Ordinance No. 22-15 requires hosts to collect and remit Transient Occupancy Tax (TOT) to the City without compensation.

149. Compelling private citizens to perform unpaid labor for the government constitutes involuntary servitude in violation of the Thirteenth Amendment.

150. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that government cannot compel uncompensated labor from private citizens. See United States v. Kozminski, 487 U.S. 931 (1988); Pelman v. McDonald's Corp., 396 F.3d 508 (2d Cir. 2005).

151. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing the City's tax collection requirement. By blocking hosts who refuse to perform uncompensated tax collection labor, they become liable as state actors under § 1983.

152. But for Defendants' continuing requirement that Plaintiff perform unpaid tax collection labor, Plaintiff would not continue to be subjected to ongoing involuntary servitude. This is not a past violation—Defendants continue to enforce this requirement each and every day. Every day that

Plaintiff remains unable to host without performing uncompensated government labor constitutes a fresh Thirteenth Amendment violation.

153. Defendants' actions have caused Plaintiff economic harm and violation of his Thirteenth Amendment rights.

FOURTH CAUSE OF ACTION
Violation of Fourteenth Amendment - Procedural Due Process
(42 U.S.C. § 1983)
Against All Defendants

154. Plaintiff realleges paragraphs 1-153 as if fully set forth herein.

155. The Fourteenth Amendment's Due Process Clause protects Plaintiff's property interest in his business, income, and Airbnb account.

156. Defendants deprived Plaintiff of this property interest without providing any pre-deprivation hearing, notice, or opportunity to be heard.

157. The Fourteenth Amendment requires pre-deprivation due process when the government deprives an individual of a protected property or liberty interest.

158. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that government must provide pre-deprivation process before terminating a protected property interest. See Mathews v. Eldridge, 424 U.S. 319 (1976); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); Barry v. Barchi, 443 U.S. 55 (1979).

159. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when they summarily terminated Plaintiff's account without due process. Their enforcement of the City's ordinance through immediate blocking without notice or hearing subjects them to liability as state actors under § 1983.

160. But for Defendants' continuing deprivation without due process, Plaintiff would have an opportunity to challenge the deprivation today and end the financial devastation that has now exceeded 730+ days and

continues to worsen daily. This is not a past violation—Defendants continue to deprive Plaintiff without due process each and every day. Every day that passes without a hearing or opportunity to be heard constitutes a fresh procedural due process violation.

161. Defendants' actions have caused Plaintiff severe economic harm, loss of livelihood, and denial of fundamental due process rights.

FIFTH CAUSE OF ACTION
Violation of Fourteenth Amendment - Substantive Due Process
(42 U.S.C. § 1983)
Against All Defendants

162. Plaintiff realleges paragraphs 1-161 as if fully set forth herein.

163. Plaintiff has a fundamental liberty interest in earning a living and pursuing his chosen occupation.

164. Defendants have deprived Plaintiff of this fundamental right by conditioning it on waiver of other constitutional rights.

165. There is no legitimate governmental interest that justifies this deprivation.

166. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that individuals have a protected liberty interest in pursuing their chosen occupation. See Schware v. Board of Bar Examiners, 353 U.S. 232 (1957); Greene v. McElroy, 360 U.S. 474 (1959); Conn v. Gabbert, 526 U.S. 286 (1999).

167. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when they enforced the City's conditioning scheme by blocking Plaintiff's ability to earn a living. Their participation in depriving Plaintiff of his fundamental liberty interest subjects them to liability as state actors under § 1983.

168. But for Defendants' ongoing unconstitutional conditioning scheme, Plaintiff's fundamental right to earn a living would not continue to be

violated today and every day. This is not a past violation—Defendants continue to enforce this scheme each and every day. Every day that Plaintiff is denied his fundamental right to earn a living constitutes a fresh substantive due process violation.

169. Defendants' actions have caused Plaintiff severe economic harm and deprivation of his fundamental liberty interest.

SIXTH CAUSE OF ACTION
Violation of Eighth Amendment - Excessive Fines
(42 U.S.C. § 1983)
Against City Defendants

170. Plaintiff realleges paragraphs 1-169 as if fully set forth herein.

171. Ordinance No. 22-15 imposes fines of up to $1,000 per day for violations.

172. These fines are grossly disproportionate to any alleged offense and constitute excessive fines under the Eighth Amendment.

173. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that fines must be proportionate to the offense. See United States v. Bajakajian, 524 U.S. 321 (1998); Timbs v. Indiana, 139 S. Ct. 682 (2019).

174. Defendants' imposition of excessive fines violates the Eighth Amendment and has caused Plaintiff economic harm.

SEVENTH CAUSE OF ACTION
Violation of Fifth Amendment - Deprivation Without Due Process
(42 U.S.C. § 1983)
Against All Defendants

175. Plaintiff realleges paragraphs 1-174 as if fully set forth herein.

176. The Fifth Amendment prohibits deprivation of property without due process of law.

177. Defendants have deprived Plaintiff of his property rights without just compensation or due process.

178. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that government takings require just compensation. See Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978).

179. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing this taking, subjecting them to liability as state actors under § 1983.

180. Defendants' actions have caused Plaintiff severe economic harm and constitutional violations.

EIGHTH CAUSE OF ACTION
Violation of First Amendment - Retaliation and Suppression of Speech
(42 U.S.C. § 1983)
Against All Defendants

181. Plaintiff realleges paragraphs 1-180 as if fully set forth herein.

182. Plaintiff exercised his First Amendment right to object to unconstitutional government action.

183. Defendants retaliated against Plaintiff by maintaining the deprivation for 730+ days.

184. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that government cannot retaliate against citizens for exercising First Amendment rights. See Hartman v. Moore, 547 U.S. 250 (2006); Nieves v. Bartlett, 139 S. Ct. 1715 (2019); Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009).

185. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when they maintained Plaintiff's account block in retaliation for his constitutional objections, subjecting them to liability as state actors under § 1983.

186. Defendants' retaliation has caused Plaintiff severe harm and chilled his exercise of constitutional rights.

NINTH CAUSE OF ACTION
Violation of Fourteenth Amendment - Equal Protection
(42 U.S.C. § 1983)
Against All Defendants

187. Plaintiff realleges paragraphs 1-186 as if fully set forth herein.

188. The Fourteenth Amendment's Equal Protection Clause prohibits discrimination based on race, ethnicity, and economic status.

189. Defendants targeted Plaintiff based on his Hispanic race and ethnicity and his economic vulnerability.

190. Defendants designed Ordinance No. 22-15 with discriminatory intent to exploit minority and economically vulnerable hosts.

191. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that government cannot discriminate based on race or target individuals based on protected class status. See Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977); Washington v. Davis, 426 U.S. 229 (1976); Korematsu v. United States, 323 U.S. 214 (1944).

192. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when they enforced this discriminatory scheme, subjecting them to liability as state actors under § 1983.

193. Defendants' discriminatory conduct has caused Plaintiff severe harm based solely on his race, ethnicity, and economic status.

TENTH CAUSE OF ACTION
Conspiracy to Violate Civil Rights
(42 U.S.C. §§ 1983 and 1985(3))
Against All Defendants

194. Plaintiff realleges paragraphs 1-193 as if fully set forth herein.

195. Defendants entered into a conspiracy to deprive Plaintiff of his constitutional rights.

196. The conspiracy was motivated by racial and class-based animus targeting Hispanic, economically vulnerable hosts.

197. Defendants took overt acts in furtherance of the conspiracy, including blocking Plaintiff's listing and maintaining the deprivation for 730+ days.

198. CLEARLY ESTABLISHED LAW (Ninth Circuit): It was clearly established that conspiracies to violate civil rights are actionable under §§ 1983 and 1985(3). See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Griffin v. Breckenridge, 403 U.S. 88 (1971).

199. The conspiracy has caused Plaintiff severe economic, emotional, and constitutional harm.

ELEVENTH CAUSE OF ACTION

Monell Municipal Liability

(42 U.S.C. § 1983)

Against City of Inglewood

200. Plaintiff realleges paragraphs 1-199 as if fully set forth herein.

201. The City of Inglewood is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because the constitutional violations resulted from official policy, custom, failure to train, and ratification.

202. The City's express policy (Ordinance No. 22-15) was the moving force behind the constitutional violations.

203. The City's custom of targeting minority communities was the moving force behind the discriminatory enforcement.

204. The City's failure to train officials in constitutional law was the moving force behind the violations.

205. Mayor Butts, as final policymaker, ratified the constitutional violations by maintaining enforcement despite knowledge of harm.

206. The City's policies, customs, and practices have caused Plaintiff severe harm.

TWELFTH CAUSE OF ACTION
California Bane Act
(Cal. Civ. Code § 52.1)
Against All Defendants

207. Plaintiff realleges paragraphs 1-206 as if fully set forth herein.

208. Defendants interfered with Plaintiff's constitutional rights by threats, intimidation, or coercion.

209. Defendants threatened Plaintiff with complete economic destruction unless he waived his constitutional rights.

210. The Bane Act provides statutory damages of $25,000 per violation and mandatory attorney's fees.

211. Defendants' conduct violated the Bane Act and caused Plaintiff severe harm.

THIRTEENTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
Against All Defendants

212. Plaintiff realleges paragraphs 1-211 as if fully set forth herein.

213. Defendants' conduct was extreme and outrageous—targeting a poor Hispanic man for economic destruction based on discriminatory assumptions.

214. Defendants intended to cause severe emotional distress or acted with reckless disregard of the probability of causing such distress.

215. Plaintiff has suffered severe emotional distress including major depressive disorder, anxiety, and passive death wishes.

216. Defendants' conduct was the proximate cause of Plaintiff's severe emotional distress.

FOURTEENTH CAUSE OF ACTION
Tortious Interference with Contractual Relations
Against Airbnb Defendants

217. Plaintiff realleges paragraphs 1-216 as if fully set forth herein.

218. Plaintiff had a valid contract with Airbnb to use the platform for hosting.

219. The City Defendants knew of this contract and intentionally interfered with it by forcing Airbnb to terminate Plaintiff's account.

220. The City's interference was wrongful and without justification.

221. Plaintiff has been harmed by this interference through loss of income and business opportunity.

FIFTEENTH CAUSE OF ACTION

Tortious Interference with Prospective Economic Advantage

Against All Defendants

222. Plaintiff realleges paragraphs 1-221 as if fully set forth herein.

223. Plaintiff had an economic relationship with prospective guests with the probability of future economic benefit.

224. Defendants knew of this relationship and intentionally interfered with it.

225. Defendants' interference was wrongful by means other than and beyond the act of interference itself.

226. Plaintiff has been harmed by this interference.

SIXTEENTH CAUSE OF ACTION

Violation of California Constitution - Due Process (Art. I, § 7)

Against All Defendants

227. Plaintiff realleges paragraphs 1-226 as if fully set forth herein.

228. The California Constitution provides independent protection for due process rights.

229. Defendants violated Plaintiff's due process rights under the California Constitution by depriving him of property without notice or hearing.

230. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing these violations, subjecting them to liability under California constitutional provisions.

231. Defendants' violations have caused Plaintiff severe harm.

SEVENTEENTH CAUSE OF ACTION

Violation of California Constitution - Privacy (Art. I, § 1)

Against All Defendants

232. Plaintiff realleges paragraphs 1-231 as if fully set forth herein.

233. The California Constitution provides an explicit right to privacy.

234. Defendants violated Plaintiff's privacy rights by requiring him to consent to warrantless inspections of his home.

235. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing this privacy violation, subjecting them to liability under California constitutional provisions.

236. Defendants' violations have caused Plaintiff severe harm.

EIGHTEENTH CAUSE OF ACTION

Violation of California Constitution –
Unreasonable Searches (Art. I, § 13)

Against All Defendants

237. Plaintiff realleges paragraphs 1-236 as if fully set forth herein.

238. The California Constitution prohibits unreasonable searches and seizures.

239. Defendants violated this right by conditioning economic activity on consent to warrantless searches.

240. STATE ACTOR LIABILITY: Airbnb and CEO Chesky acted under color of state law when enforcing this search requirement, subjecting them to liability under California constitutional provisions.

241. Defendants' violations have caused Plaintiff severe harm.


NINETEENTH CAUSE OF ACTION
Declaratory Relief
(28 U.S.C. § 2201; Cal. Code Civ. Proc. § 1060)
Against All Defendants


242. Plaintiff realleges paragraphs 1-241 as if fully set forth herein.

243. An actual controversy exists between Plaintiff and Defendants concerning their respective rights and duties.

244. Plaintiff seeks a declaration that:

a) Ordinance No. 22-15 is unconstitutional on its face and as applied;

b) Defendants violated Plaintiff's constitutional rights;

c) Defendants' actions constitute state action subject to constitutional constraints;

d) Plaintiff is entitled to resume hosting without waiving constitutional rights.

245. A declaration is necessary and appropriate to resolve this controversy.

VI. DAMAGES AND REMEDIES

A. ECONOMIC DAMAGES

246. Lost Income: Plaintiff has lost over $375,000 in hosting income over 730+ days at an average rate of $500 per day, which continues to accrue daily.

247. Property Damage: Plaintiff has incurred substantial property damage due to inability to fund necessary repairs, including:

a) Structural deterioration estimated at $50,000

b) Deferred maintenance costs estimated at $25,000

c) Diminished property value estimated at $100,000

248. Debt Accumulation: Plaintiff has accumulated debts of approximately $75,000 due to inability to pay property taxes, insurance, and basic living expenses.

249. Future Lost Income: Plaintiff will continue to lose income at $500 per day until the deprivation ends, with total projected losses exceeding $500,000.

250. Additional consequential economic damages to be proven at trial.

251. Enhanced economic damages warranted due to racially discriminatory motivation and prolonged deliberate indifference.

B. NON-ECONOMIC DAMAGES

252. Severe Emotional Distress: Plaintiff has suffered and continues to suffer:

a) Major depressive disorder diagnosed by mental health professionals

b) Generalized anxiety disorder

c) Passive death wishes and suicidal ideation

d) Feelings of worthlessness and hopelessness

e) Sleep disturbances and nightmares

f) Loss of enjoyment of life and social withdrawal

253. Pain and Suffering: Plaintiff has endured 730+ days of mental anguish, emotional trauma, and psychological torment knowing that he is being targeted based on his race, ethnicity, and economic status.

254. Humiliation and Loss of Dignity: Plaintiff has suffered severe humiliation from being treated as 'easy prey' due to his Hispanic ethnicity and economic vulnerability.

255. Trauma from Discriminatory Persecution: Plaintiff continues to suffer from the knowledge that Defendants deliberately targeted him based on racist assumptions that poor Hispanic individuals will submit their rights 'for a dollar.'

256. Total non-economic damages to be proven at trial, with enhancement for racially motivated harm.

257. DAILY EMOTIONAL IMPACT: Plaintiff's emotional distress is not a one-time trauma that has healed or diminished. Rather, Plaintiff experiences

renewed emotional injury each day: Every morning Plaintiff wakes to the reality that he cannot earn income or provide for his family. Every interaction with neighbors requires Plaintiff to experience fresh shame and humiliation. Every need his daughter expresses that Plaintiff cannot fulfill inflicts new emotional pain. Every night Plaintiff goes to bed knowing the deprivation will continue the next day. Every attempt to plan for his future is met with the certainty of ongoing persecution. This daily repetition of emotional trauma compounds rather than diminishes the harm. The 730+ days of deprivation represent not one injury experienced 730 times, but 730+ separate injuries, each building upon the last.

## C. STATUTORY DAMAGES

258. Bane Act Damages: California Civil Code § 52.1(b)(3) provides minimum statutory damages of $25,000 per violation. Plaintiff has suffered multiple violations over 730+ days, entitling him to substantial statutory damages.

D. PUNITIVE DAMAGES

259. Punitive Damages Against Mayor James T. Butts, Jr. (Individual Capacity):

a) Mayor Butts engaged in malicious, oppressive, and fraudulent conduct

b) Mayor Butts demonstrated deliberate indifference to Plaintiff's documented catastrophic harm including passive death wishes

c) Mayor Butts showed mockery and contempt for Plaintiff's constitutional rights

d) Mayor Butts maintained 730+ days of deprivation despite knowledge of violations

e) Mayor Butts conspired to circumvent constitutional protections

f) Mayor Butts intentionally discriminated based on race and ethnicity, targeting poor Hispanic hosts as 'easy prey'

g) Mayor Butts demonstrated reckless disregard of Plaintiff's constitutional rights motivated by discriminatory belief that poor Hispanic hosts would not resist

260. Punitive Damages Against Brian Chesky (Individual Capacity):

a) Chesky personally approved and profits from discriminatory conspiracy

b) Chesky demonstrated deliberate indifference to constitutional violations

c) Chesky maintained corporate policy enabling racial discrimination against minority hosts

d) Chesky showed reckless disregard of hosts' constitutional rights

e) Chesky knowingly participated in scheme designed to exploit economically vulnerable minority hosts

261. Punitive damages are warranted to:

a) Punish Defendants for egregious, discriminatory conduct

b) Deter similar continual racial discrimination and continual constitutional violations in future

c) Send message that poor Hispanic individuals cannot be targeted as 'easy prey' for governmental-corporate exploitation

d) Vindicate public policy against continual racial discrimination and for continual constitutional rights protection

E. INJUNCTIVE RELIEF

262. Plaintiff seeks preliminary and permanent injunctive relief:

a) Declaring Ordinance No. 22-15 unconstitutional on its face and as applied to plaintiff

b) Enjoining Defendants from the continued enforcement of Ordinance No. 22-15

c) Ordering Airbnb to immediately restore Plaintiff's account and listing

d) Enjoining Defendants from requiring waiver of constitutional rights as condition of economic activity

e) Enjoining Defendants from discriminating against hosts based on race, ethnicity, or economic status

F. ATTORNEY'S FEES AND COSTS

263. Plaintiff seeks reasonable attorney's fees and costs under:

a) 42 U.S.C. § 1988 (federal civil rights claims)

b) Cal. Civ. Code § 52.1(b)(3) (Bane Act - mandatory fees)

c) Any other applicable statutes

G. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

264. Pre-judgment interest on all damages from date of accrual (October 20, 2023) at maximum legal rate.

265. Post-judgment interest on all amounts awarded at legal rate.

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff HECTOR GUTIERREZ respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

266.  COMPENSATORY DAMAGES in an amount to be proven at trial, including:[1]

a) Economic damages exceeding $5,000,000 for lost income, property damage, and debt accumulation

b) Non-economic damages for severe emotional distress, pain and suffering, humiliation, and loss of dignity for no less than $50,000,000,000.00 dollars.

c) Enhanced damages for racially discriminatory motivation for no less than $50,000,000,000.00 dollars.

[1] Plaintiff requests substantial damages to preserve the jury's ability to send a proportionate message regarding the severity of Defendants' conduct. Under the prayer cap rule, damages awards are limited to the amounts pleaded in the complaint. Plaintiff seeks damages commensurate with: (1) the billion-dollar net worth of corporate Defendant Airbnb; (2) the 730+ days of continuous constitutional violations; (3) the discriminatory targeting of minority hosts; and (4) the need for deterrence adequate to prevent future violations by well-funded governmental and corporate actors. The jury will determine the appropriate amount based on evidence at trial.

267. PUNITIVE DAMAGES against Mayor James T. Butts, Jr. and Brian Chesky in their individual capacities in amounts sufficient to punish and

deter their malicious, oppressive, and discriminatory conduct; for no less than $50,000,000,000.00 dollars.

268. STATUTORY DAMAGES under California Civil Code § 52.1 (Bane Act) in the minimum amount of $25,000 per violation;

269. DECLARATORY RELIEF declaring that:

a) Inglewood Municipal Code Ordinance No. 22-15 is unconstitutional on its face and as applied to Plaintiff.

b) Defendants violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments

c) Defendants' actions constitute state action subject to constitutional constraints

d) Airbnb and CEO Chesky acted under color of state law

e) Plaintiff is entitled to resume hosting without waiving constitutional rights

270. PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF:

a) Enjoining enforcement of Ordinance No. 22-15

b) Ordering immediate restoration of Plaintiff's Airbnb account and listing

c) Enjoining Defendants from conditioning economic activity on waiver of constitutional rights

d) Enjoining Defendants from discriminating based on race, ethnicity, or economic status

271. ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988, Cal. Civ. Code § 52.1(b)(3), and any other applicable statutes; of no less than $1,000,000.00 dollars.

272. PRE-JUDGMENT INTEREST from November 15th, 2023, at the maximum legal rate;

273. POST-JUDGMENT INTEREST at the legal rate;

274. COSTS OF SUIT;

275. Such other and further relief as the Court deems just and proper, including relief necessary to remedy the discriminatory persecution and ensure it is not repeated against Plaintiff or other minority hosts.

VIII. DEMAND FOR JURY TRIAL

276. Plaintiff hereby demands trial by jury on all issues so triable as a matter of right under the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

DATED: November 15, 2025

Respectfully submitted,

*Hector Gutierrez*

Hector Gutierrez, Pro Se
1017 Rosewood Avenue
Inglewood, CA 90301
424-200-1504
heg254@aol.com