LODGED

CLERK, U.S. DISTRICT COURT

05/26/26

CENTRAL DISTRICT OF CALIFORNIA

BY_____AF_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

FILED

CLERK, U.S. DISTRICT COURT

05/26/26

CENTRAL DISTRICT OF CALIFORNIA

BY_____AF_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Hector Gutierrez
1015 Rosewood Ave
Inglewood CA. 90301
424-200-1504
Heg254@aol.om

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **HECTOR GUTIERREZ,** | **CASE NO.:  EDCV 25-11655-MCS (AS)** |
| **PLAINTIFF,,** | |
| **vs.** | **FIRST AMENDED COMPLAINT (42 U.S.C. § 1983)** |
| **CITY OF INGLEWOOD; JAMES T. BUTTS, JR., in his official capacity as Mayor of the City of Inglewood; ALICIA FONG, in her individual and official capacities (sued herein as Doe 1); AIRBNB, INC.; BRIAN CHESKY; and DOES 2 through 10, inclusive, DEFENDANTS.** | **(1) Fourth Amendment — Unconstitutional Condition** <br> **(2) Substantive Due Process — Right to Pursue a Lawful Occupation** <br> **(3) Procedural Due Process** <br> **(4) First Amendment — Compelled Speech / Prior Restraint** <br> **(5) § 1983 Conspiracy** <br> **(6) Monell — Municipal Liability** <br> **(7) Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)** <br> **(8) California Constitution, Art. I §§ 1, 7, 13 (Declaratory/Injunctive)** <br> **(9) Contract Clause (in the Alternative)** <br> **(10) Declaratory Relief (28 U.S.C. § 2201)** <br> **DEMAND FOR JURY TRIAL** |

PAGE **1** OF **33**

I.  INTRODUCTION

1.      This case is about the most basic of liberties: the right to be let alone. As Justice Brandeis wrote, the Framers "conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). The principle he described is secured today by the Fourth Amendment's protection of the home and by the liberty guaranteed by the Fourteenth Amendment. Plaintiff Hector Gutierrez asked only to be left alone to earn an honest living from his own home—his primary residence, where he lives year-round—as he lawfully had for years. The City of Inglewood would not let him, unless he first surrendered his constitutional rights.

2.      Under the City's short-term-rental ordinance, no resident may host—or even advertise—a short-term rental without a City permit, and the City will not issue that permit unless the resident first agrees, in advance, to: (a) submit to warrantless governmental inspections of the interior of his home every six months, with no neutral pre-compliance review; (b) sign a covenant indemnifying and holding the City harmless from "any and all" claims and suits; (c) act as the

City's unpaid collector of its transient-occupancy tax; and (d) publish a City-assigned permit number in every advertisement and disclose to the City his advertising platforms and booking records. The threatened price of refusal is fines of up to $5,000 per day, revocation, and criminal penalties.

3.     The City did not act alone. It commanded the hosting platform, Airbnb, to enforce its scheme—and, on information and belief, Airbnb disclosed Plaintiff's private identifying and listing information to the City, which the City then used to send Plaintiff a letter demanding that he sign the permit application or cease hosting. Plaintiff expressly objected that the demand was unconstitutional and refused to sign away his rights. He was shut out of his livelihood and is injured anew every day the scheme is enforced.

4.     The Constitution is the supreme law, and an ordinance repugnant to it is void. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177–80 (1803) ("a law repugnant to the Constitution is void"). The City's asserted police power and its interest in revenue and control cannot override Plaintiff's constitutional rights. Nor are the conditions a novel question: the Supreme Court held a decade ago that compelling entry or the production of private records with no pre-

compliance review is unreasonable, and a federal court has already enjoined a materially identical municipal demand that booking platforms hand over host data. Plaintiff seeks a declaration that the conditions are unconstitutional, an injunction permitting him to host and advertise without surrendering his rights, and damages, including lost rental income of approximately $250 to $500 per day.

## II.  JURISDICTION AND VENUE

5.      This action arises under the Constitution of the United States and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

6.      The Court has supplemental jurisdiction over Plaintiff's California-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

7.      The Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65.

8.      Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in or are subject to suit in this District and a substantial part of the events occurred in the City of Inglewood, within the Western Division.

### III.  PARTIES

9.      Plaintiff Hector Gutierrez is, and at all relevant times was, a natural person who owns and resides year-round at his primary residence, 1017 Rosewood Avenue, Inglewood, California.

10.      Defendant City of Inglewood (the "City") is a California municipal corporation that enacted and enforces the ordinance and permit scheme challenged here and is a "person" subject to suit under 42 U.S.C. § 1983.

11.      Defendant James T. Butts, Jr., is sued in his official capacity as Mayor of the City of Inglewood. A claim against him in his official capacity is a claim against the City.

12.      Defendant Alicia Fong, sued herein as Doe 1, is and at relevant times was the City's Housing Authority Supervisor responsible for administering and enforcing the short-term-rental program, acting under color of state law. She is

the supervisor who informed Plaintiff that he could not use Airbnb unless he complied with the permit scheme. She is sued in her individual and official capacities.

13.    Defendant Airbnb, Inc. ("Airbnb") is a corporation that operates the short-term-rental hosting platform on which Plaintiff lawfully listed his home. As alleged below, Airbnb, acting under the command of the City's Ordinance, disclosed Plaintiff's private information to the City and blocked Plaintiff's listing, and thereby acted under color of state law.

14.    Defendant Brian Chesky is the Chief Executive Officer of, and a policymaker for, Airbnb, Inc., sued with respect to the platform conduct alleged.

15.    Defendants Does 2 through 10 are persons or entities whose true names and capacities are unknown to Plaintiff, who sues them by fictitious names and will amend when they are ascertained. Each is, on information and belief, responsible in some manner for the acts and injuries alleged.

## IV.  FACTUAL ALLEGATIONS

### A.  The Ordinance and Permit Scheme

16.    On July 19, 2022, the City adopted Ordinance No. 22-15, codified in Inglewood Municipal Code Chapter 8, Article 11, which prohibits any person from renting, offering, or advertising a dwelling as a short-term rental within the City without a valid City short-term-rental permit ("STR permit"). See IMC § 8-138.

17.    No resident may host or even advertise a short-term rental without obtaining the STR permit and displaying the City-assigned permit number in every listing on every platform used.

18.    As a condition of issuance, the City's STR permit application requires the applicant to sign the instruments described below, which are the means by which the City extracts the conditions challenged here.

19.    The application requires the applicant to sign a "Consent to Inspect" form agreeing, in advance and as a precondition of the permit, that the City will conduct an interior and exterior "Health and Safety Inspection" of the

home on a biannual (every six months) basis, with no mechanism for pre-compliance review before a neutral decisionmaker.

20.     The application requires the applicant to provide the City the URL of every platform on which the dwelling is advertised, to display the City permit number in every listing, and to consent to provide the City "all information regarding listings, advertisements, and rental activity/bookings"—compelling the ongoing production of the applicant's private business and advertising records to the City, again with no pre-compliance review.

21.     The application requires the applicant to "indemnify, save, protect, hold harmless the City . . . from any and all claims, demands, damages, fines, obligations, suit, judgment, penalties, causes of action, losses, liabilities, or costs"; to "collect and remit Transient Occupancy Taxes (TOT) monthly" to the City; and to acknowledge exposure to "substantial fines, the revocation of [the] short-term rental permit, criminal penalties, or other significant measures," including penalties of up to $5,000 per day. These threatened penalties are the coercive force behind each condition.

B.  The City Conscripts Airbnb as Its Enforcement Arm

22.    The Ordinance commands short-term-rental host platforms operating in the City, including Airbnb, to disclose City listings to the City and to remove "any improper listings within five calendar days of the City providing written . . . notification of an unpermitted or unauthorized Short Term Rental," on pain of penalty. See IMC § 8-143. By this command, the City does not merely regulate Airbnb; it compels Airbnb to carry out the City's blocking decisions and to act as a conduit of resident information to the City.

C.  Plaintiff's Established Livelihood, the Pandemic, and a Serious Illness

23.    For years before 2020, Plaintiff lawfully and successfully hosted domestic and international travelers at his Inglewood home through the Airbnb platform, building an established hosting relationship and history on that platform. He did so to generate the income necessary to pay the property taxes on the family residence and to fund ongoing repairs to preserve the home; without that income, the property is at risk of disrepair, tax foreclosure, and loss, and Plaintiff is at risk of poverty and homelessness.

24.     In or about January or February 2020, Plaintiff ceased hosting because the COVID-19 pandemic shut down global travel.

25.     Thereafter, in 2022 and 2023, Plaintiff suffered a serious, life-threatening medical condition that required a major bowel-resection surgery and a substantial period of recovery and incapacity, which delayed his ability to resume hosting.

26.     Plaintiff's first practical opportunity to resume—his planned "grand reopening" of his established hosting—was on  November 15, 2023, when he wanted to reactivate his Airbnb listing.

27.     Airbnb informed Plaintiff that, pursuant to the Ordinance, he could not host travelers on its platform unless he obtained a City STR permit, and Airbnb then blocked Plaintiff's listing for lack of a permit. Airbnb's block was the direct product of the City's command in IMC § 8-143.

D.  Airbnb's Disclosure of Plaintiff's Private Information and the City's Coercive Demand

PAGE **10** OF **33**

28.     On information and belief, Airbnb disclosed Plaintiff's private identifying, contact, and listing information to the City pursuant to IMC § 8-143. The City used that information to send Plaintiff a written communication demanding that he complete and sign the STR permit application—including the consent-to-inspect, disclosure, indemnification, and tax-collection instruments— or cease hosting and advertising.

29.     Defendant Alicia Fong, the City's Housing Authority Supervisor, told Plaintiff in substance that he had to comply with the permit scheme—including its conditions—or, in words to the effect, "you don't make money." That statement, together with the City's threatened fines of up to $5,000 per day, revocation, and criminal penalties, was a coercive demand that Plaintiff surrender his constitutional rights or be deprived of his livelihood.

30.     Plaintiff communicated to the City and to Airbnb that the demand was unconstitutional and that the application operated as a waiver of his privacy, property, and other constitutional rights. His objection was disregarded. Plaintiff refused to sign the application or surrender his rights.

E.  The City Acted with Knowledge, and the Stated Safety Rationale Is Pretextual

31.    Plaintiff is informed and believes that the City and its policymakers imposed and enforced the inspection-consent and records-disclosure conditions with knowledge that compelling entry into a home or the production of private records, with no opportunity for pre-compliance review, has been settled to be unconstitutional for years, and that a federal court had enjoined a materially identical platform-disclosure demand. The City imposed and enforced these conditions notwithstanding that knowledge and in reckless disregard of Plaintiff's known rights.

32.    To the extent the City asserts a public-safety justification, that justification is pretextual: the challenged conditions are not tailored to, and do not advance, any genuine public-safety interest, and on information and belief are designed to extract revenue and control. In any event, the City's motive does not save a scheme that is unconstitutional on its face.

F.  Ongoing Deprivation and Damages

33.    Since the block, and continuing each day the City enforces its scheme, Plaintiff has been unable to host or advertise short-term rentals of his home and has been deprived of the income, the use of his property, and the liberty interests described above.

34.    As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including lost rental income that Plaintiff is informed and believes is approximately $250 to $500 per day, accruing daily; the carrying costs of the property, including property taxes and repairs the hosting income was used to meet; and emotional distress. Plaintiff seeks recovery of this lost income, and the other damages alleged, from the City and from Airbnb, and will prove the amounts at trial.

## V.  TIMELINESS, CONTINUING VIOLATION, AND TOLLING

35.    Plaintiff's claims are timely. Section 1983 borrows California's two-year personal-injury limitations period. Cal. Civ. Proc. Code § 335.1. Plaintiff's claim accrued on or about November 15, 2023, when his listing was blocked, and he filed his original Complaint on or about November 15, 2025,

within two years. This First Amended Complaint relates back under <u>Federal Rule of Civil Procedure 15(c)</u>.

36.    Independently, the scheme inflicts a continuing violation. "When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury." Flynt v. Shimazu, <u>940 F.3d 457, 462</u> (9th Cir. 2019). Because the City enforces the challenged conditions against Plaintiff every day he is barred from hosting and advertising, a fresh constitutional violation arises—and the limitations period renews—with each day of enforcement.

37.    In the alternative, the limitations period was equitably tolled during the period of Plaintiff's serious illness, surgery, and incapacity in 2022–2023, which prevented him from resuming his hosting and pursuing his claims with reasonable diligence.

## VI.  AIRBNB ACTED UNDER COLOR OF STATE LAW

38.    Airbnb's conduct—disclosing Plaintiff's private information to the City and blocking his listing—is fairly attributable to the State under more than

one recognized test, and Airbnb therefore acted under color of state law within the meaning of § 1983.

39.     State compulsion. A private party's conduct is attributable to the State where the State "has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). IMC § 8-143 affirmatively commands Airbnb, on penalty, to disclose listings and to remove unpermitted Inglewood listings within five days of City notice. Airbnb's disclosure of Plaintiff's information and its block of his listing were compelled by that command.

40.     Joint action and entwinement. A private party is a state actor where it is "a willful participant in joint action with the State or its agents," Lugar v. Edmondson Oil Co., 457 U.S. 922, 941–42 (1982), or is entwined with governmental policy, Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 809–11 (2019). Airbnb and the City jointly operated the enforcement mechanism—Airbnb supplying resident information and removing listings, the

PAGE **15** OF **33**

City directing the result—and Airbnb's removal-and-disclosure function for Inglewood exists to execute the City's permit policy.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment — Unconstitutional Condition (Warrantless Home Inspection and Compelled Disclosure of Papers)**

**(42 U.S.C. § 1983 — Against the City, Butts (official capacity), Fong, Airbnb, and Does 2–10)**

41. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 22 through 32 and 38 through 40 as though fully set forth herein.

42. "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961); see Payton v. New York, 445 U.S. 573, 586 (1980). Plaintiff's home is his private, year-round residence, entitled to the Fourth Amendment's highest protection.

43.     Warrantless searches are per se unreasonable subject to limited exceptions, and even an administrative inspection or records-production scheme is unreasonable unless it affords an opportunity for pre-compliance review before a neutral decisionmaker. City of Los Angeles v. Patel, 576 U.S. 409, 420 (2015); See v. City of Seattle, 387 U.S. 541, 545 (1967); Camara v. Mun. Court, 387 U.S. 523, 534 (1967). Government may not condition a permit on the surrender of a constitutional right. Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604–06 (2013); Perry v. Sindermann, 408 U.S. 593, 597 (1972).

44.     The Consent-to-Inspect requirement compels Plaintiff to consent prospectively to recurring warrantless interior inspections of his home with no pre-compliance review; and the scheme compels the production to the City of Plaintiff's advertising URLs, listing data, and booking records—his papers and effects—again with no pre-compliance review, including, on information and belief, the information the City obtained from Airbnb under IMC § 8-143. A federal court has held that a materially identical municipal demand for platform host data is likely an unreasonable search under Patel. Airbnb, Inc. v. City of New

York, 373 F. Supp. 3d 467 (S.D.N.Y. 2019). Each condition is invalid on its face and as applied, and its imposition and enforcement deprived Plaintiff of his Fourth Amendment rights under color of state law, proximately causing the injuries alleged.

**SECOND CLAIM FOR RELIEF**

**Substantive Due Process — Right to Pursue a Lawful Occupation; Unconstitutional Conditions**

**(42 U.S.C. § 1983 — Against the City, Butts (official capacity), Fong, and Does 2–10)**

45.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 26 through 34 as though fully set forth herein.

46.    The liberty component of the Fourteenth Amendment protects the right to pursue one's chosen field of private employment and to "engage in any of the common occupations of life" as part of the "orderly pursuit of happiness by

free men." Meyer v. Nebraska, 262 U.S. 390, 399 (1923); Conn v. Gabbert, 526 U.S. 286, 291–92 (1999); Bd. of Regents v. Roth, 408 U.S. 564, 572 (1972).

47.    Unlike the "brief interruption" held insufficient in Conn, the City's scheme is a complete and ongoing prohibition on Plaintiff's established livelihood unless he surrenders his rights. The City may not require Plaintiff to relinquish those rights as the price of making a living. Koontz, 570 U.S. at 604–06; Perry, 408 U.S. at 597. Defendants thereby deprived Plaintiff of substantive due process under color of state law, proximately causing his loss of livelihood, his daily lost income, and the other injuries alleged.

**THIRD CLAIM FOR RELIEF**

**Procedural Due Process**

**(42 U.S.C. § 1983 — Against the City, Butts (official capacity), Fong, and Does 2–10)**

48.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 26 through 34 as though fully set forth herein.

49.    Plaintiff has protected liberty and property interests in pursuing his lawful occupation and in the use of his home. The sufficiency of process is measured by (1) the private interest affected, (2) the risk of erroneous deprivation and the value of additional safeguards, and (3) the government's interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

50.    The scheme affords no meaningful pre-deprivation process: no hearing before a neutral decisionmaker to contest the inspection or disclosure demands or the conditions, and no pre-compliance review before the threatened penalties attach. The deprivation of Plaintiff's livelihood is effected without constitutionally adequate process, under color of state law, proximately causing the injuries alleged.

**FOURTH CLAIM FOR RELIEF**

**First Amendment — Compelled Speech and Prior Restraint on Advertising**

**(42 U.S.C. § 1983 — Against the City, Butts (official capacity), Airbnb, and**

**Does 2–10)**

51.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 22 through 27 and 38 through 40 as though fully set forth herein.

52.    Truthful advertising of a lawful service is protected commercial speech; a restriction is invalid unless it directly advances a substantial governmental interest and is no more extensive than necessary. Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 566 (1980).

53.    The scheme forbids Plaintiff from advertising his lawful service and compels him to publish the City's permit number and disclose his advertising platforms to the City as a precondition of speaking at all; and, through IMC § 8-143, it compels Airbnb to remove his advertising. That operates as a prior restraint and a compelled-speech mandate more extensive than necessary, and cannot satisfy

Central Hudson. Defendants thereby deprived Plaintiff of his First Amendment rights under color of state law, proximately causing the injuries alleged.

**FIFTH CLAIM FOR RELIEF**

**Conspiracy to Deprive Plaintiff of Constitutional Rights Under Color of State Law**

**(42 U.S.C. § 1983 — Against the City, Fong, Airbnb, Chesky, and Does 2–10)**

54.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 34, and paragraphs 38 through 40 as though fully set forth herein.

55.     A private party acts under color of state law, and is liable under § 1983, when it conspires or jointly acts with state officials to deprive a person of constitutional rights. Dennis v. Sparks, 449 U.S. 24, 27–28 (1980); Tower v. Glover, 467 U.S. 914, 920 (1984); Franklin v. Fox, 312 F.3d 423, 441, 445 (9th Cir. 2002). To establish such a conspiracy, the plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," in which each participant

shares "the common objective of the conspiracy." Franklin, 312 F.3d at 441; see

Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

56.     Defendant Airbnb, by and through its chief executive and policymaker Defendant Brian Chesky, agreed with the City to operate and enforce the City's short-term-rental scheme. Pursuant to IMC § 8-143 and the parties' coordinated enforcement arrangement, Airbnb agreed to register and coordinate with the City, to disclose Inglewood host and listing information to the City, and to remove or block listings the City identified as unpermitted. On information and belief, this was a substantial, cooperative arrangement and a meeting of the minds—not mere passive compliance—by which Airbnb and the City shared the common objective of compelling Inglewood residents, including Plaintiff, to submit to the scheme's conditions or be excluded from the platform.

57.     The object of the conspiracy was to deprive Plaintiff of (a) his Fourth Amendment right to be free from the warrantless seizure and disclosure of his private papers and information and from warrantless inspection of his home, and (b) his Fourteenth Amendment right not to be deprived of his liberty and

property interests in his lawful livelihood and the use of his home without due process of law.

58.     In furtherance of the conspiracy, the conspirators committed overt acts, including: the City's demand that Plaintiff submit to the unconstitutional conditions; Airbnb's disclosure of Plaintiff's private identifying, contact, and listing information to the City, without a warrant and without any opportunity for pre-compliance review; and Airbnb's blocking of Plaintiff's listing at the City's direction.

59.     As a direct and proximate result of the conspiracy, Plaintiff suffered the deprivation of his Fourth and Fourteenth Amendment rights and substantial financial losses, including lost rental income of approximately $250 to $500 per day. Because Airbnb and Chesky conspired and jointly acted with the City and its officials, they acted under color of state law and are jointly and severally liable with the City and Defendant Fong for the resulting damages.

**SIXTH CLAIM FOR RELIEF**

**Monell — Municipal Liability**

**(42 U.S.C. § 1983 — Against the City of Inglewood)**

60.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 26 through 34 as though fully set forth herein.

61.    A municipality is liable under § 1983 where the deprivation is caused by an official policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978).

62.    Express policy. The deprivations alleged were caused by the City's own express, written policy—Ordinance No. 22-15, Inglewood Municipal Code Chapter 8, Article 11, the conditions embedded in the City's STR permit application, and IMC § 8-143. Because Plaintiff challenges the City's own express, written policy, municipal liability does not depend on proof of a pattern of prior similar incidents or of a failure to train; an unconstitutional express policy is itself the municipality's act and the moving force behind the violation.

63. Ratification and deliberate indifference. The City's final policymakers adopted, maintained, and enforced the scheme against Plaintiff after he objected and with knowledge of the conditions' invalidity as alleged above, evidencing deliberate indifference to the rights at stake. The City's policy was the moving force behind the violations alleged in the First through Fifth Claims, proximately causing Plaintiff's injuries.

**SEVENTH CLAIM FOR RELIEF**

**Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)**

**(Against the City, Fong, and Does 2–10)**

64. Plaintiff realleges and incorporates by reference the allegations of paragraphs 28 through 34 as though fully set forth herein.

65. Compliance with the Government Claims Act. Plaintiff has complied with the claim-presentation requirement of the California Government Claims Act. On or about [September 6, 2025], Plaintiff presented a written claim for money or damages to the City of Inglewood that described the short-term-rental

coercion and deprivations alleged in this Complaint and the resulting damages. The City failed to act on the claim within forty-five days, and the claim is deemed rejected. Cal. Gov. Code §§ 911.2, 912.4, 945.4. This action was timely commenced thereafter. Cal. Gov. Code § 945.6.

66.     The Bane Act provides a civil remedy where a person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion," with the exercise of rights secured by the Constitution or laws of the United States or California. Cal. Civ. Code § 52.1(b)–(c).

67.     Defendant Fong, acting for the City, coerced Plaintiff to surrender his constitutional rights by demanding compliance with the unconstitutional conditions on pain of losing his livelihood, reinforced by the City's threatened fines of up to $5,000 per day, revocation, and criminal penalties, and with knowledge of the rights at stake. That coercion was distinct from, and went beyond, the underlying deprivations, and has continued through the City's ongoing enforcement. As a direct and proximate result, Plaintiff suffered the

injuries alleged and is entitled to actual damages, attorney's fees and costs under Civil Code § 52.1(i), and relief under Civil Code §§ 52 and 52.1.


**EIGHTH CLAIM FOR RELIEF**

**Violation of the <u>California Constitution, Article I, §§ 1</u>, <u>7</u>, and <u>13</u> (Declaratory and Injunctive Relief)**

**(Against the City and Butts in his official capacity)**


68.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 21, and paragraphs 26 through 34 as though fully set forth herein.

69.     The California Constitution independently protects Plaintiff's rights. Article I, section 13 protects against unreasonable searches and seizures; the compelled warrantless inspection of Plaintiff's home and the compelled disclosure of his records and advertising data violate it. Article I, section 7 guarantees due process; the deprivation of Plaintiff's livelihood through the unconstitutional conditions, without adequate process, violates it. Article I, section 1 declares the

inalienable right of all people to enjoy and defend life and liberty, to acquire, possess, and protect property, and to pursue and obtain safety, happiness, and privacy; the scheme's conditions on Plaintiff's ability to make a living from his own home, and its intrusion into his home and records, violate it.

70.    Plaintiff seeks declaratory and injunctive relief to remedy these violations and does not seek damages under the California Constitution. See Katzberg v. Regents of Univ. of Cal. (2002) 29 Cal.4th 300 (declaratory and injunctive relief available; no damages action for art. I, § 7(a)); Degrassi v. Cook (2002) 29 Cal.4th 333.

**NINTH CLAIM FOR RELIEF**

**Contract Clause (U.S. Const. art. I, § 10) — Pleaded in the Alternative**

**(42 U.S.C. § 1983 — Against the City and Butts (official capacity))**

71.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 26 through 27 as though fully set forth herein.

PAGE **29** OF **33**

72.     In the alternative, the Contract Clause forbids substantial impairment of a contractual relationship unless the impairment is a reasonable and appropriate means of advancing a significant and legitimate public purpose. Sveen v. Melin, 584 U.S. 811, 819 (2018). To the extent Plaintiff held a contractual hosting relationship through the Airbnb platform that the City's scheme substantially impaired by barring his performance, and to the extent the scheme is not a reasonable and appropriate means of advancing a legitimate public purpose, the City's impairment violated the Contract Clause and proximately caused the injuries alleged.

**TENTH CLAIM FOR RELIEF**

**Declaratory Relief (28 U.S.C. §§ 2201–2202)**

**(Against all Defendants)**

73.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 34 as though fully set forth herein.

74.     An actual controversy exists between Plaintiff and Defendants concerning the constitutionality of the City's short-term-rental permit scheme and

its conditions and Defendants' enforcement of them. Plaintiff seeks a judicial declaration of the parties' rights and duties—specifically, that the challenged conditions and their enforcement are unlawful as alleged above—so that Plaintiff may host and advertise without surrendering his constitutional rights and to guide the parties' future conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.     A declaratory judgment that the challenged conditions of the City's short-term-rental permit scheme—the compelled consent to warrantless inspection, the compelled records and advertising disclosure, the compelled indemnification/hold-harmless, the compelled tax collection, and the compelled posting—are unconstitutional under the United States and California Constitutions, on their face and as applied to Plaintiff;

B.      A permanent injunction enjoining Defendants from enforcing the unconstitutional conditions against Plaintiff, and from enforcing IMC § 8-143 to disclose Plaintiff's information or block his listing, so that Plaintiff may host and advertise without surrendering his constitutional rights;

C.      Compensatory damages according to proof against the City and Airbnb, including Plaintiff's lost rental income of approximately $250 to $500 per day from the date of the block through judgment, plus carrying costs and emotional-distress damages; for not less than $50,000,000,000.00

D.      Exemplary (punitive) damages against Defendant Fong, and against Defendant Airbnb, in their individual/non-municipal capacities, for their knowing and coercive conduct (no punitive damages are sought against the City); for no less than $50,000,000,000.00

E.      Relief as authorized by California Civil Code §§ 52 and 52.1 on the Seventh Claim; for no less than $50,000,000,000.00

F.      Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and Civil Code § 52.1(i), to the extent recoverable; and

G.      Such other and further relief as the Court deems just and proper but not less than $50,000,000,000.00

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 26, 2026

Respectfully submitted,

Hector Gutierrez

Plaintiff in Pro Se